CADLE COMPANY *v.* LAWRENCE GABEL ET AL.
(AC 21282)

Lavery, C. J., and Mihalakos and Dupont, Js.

Argued January 22—officially released April 23, 2002

*Brian P. Daniels*, for the appellant (defendant Elizabeth Gabel).

*Paul N. Gilmore*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant Elizabeth Gabel appeals from the judgment of the trial court denying her motion

to discharge the plaintiff's notice of lis pendens.[1] She argues on appeal that the court improperly denied the motion to discharge because the stipulated facts precluded a finding of probable cause to sustain the lis pendens. Elizabeth Gabel claims that there was no probable cause because (1) the lack of equity in the subject property was fatal to either the plaintiff's constructive trust claim or its fraudulent transfer claims, (2) the plaintiff's claims were barred by the doctrine of collateral estoppel and (3) the plaintiff's claims were barred by the doctrine of res judicata. She claims further that the court abused its discretion when it denied her motion to reargue. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of Elizabeth Gabel's appeal. On July 27, 1987, Lawrence Gabel executed a promissory note in the amount of $610,000 in favor of Connecticut National Mortgage Company (CNMC). The note was secured by a mortgage on real property located at 21 North Main Street in Essex. On October 18, 1991, Lawrence Gabel quitclaimed the property to Elizabeth Gabel for no consideration and, thereafter, defaulted on the note. In December, 1993, Berkeley Federal Bank & Trust, FSB (Berkeley), which then owned CNMC, commenced an action to foreclose the mortgage. The defendants in that foreclosure action were the Gabels, as well as Branford Savings Bank (Branford). In 1992, Branford had filed

---

[1] The defendants are Lawrence Gabel and Elizabeth Gabel, who are husband and wife, and Norman Zolot, trustee of a trust formed to purchase Lawrence Gabel's note and mortgage relative to the subject real property. Elizabeth Gabel, the beneficiary of the trust, now holds title to the real property that is subject to the notice of lis pendens. As such, she alone filed the motion whose denial is at issue in this appeal. To avoid confusion, we will refer to each of the defendants by name. The plaintiff is a judgment creditor of Lawrence Gabel by virtue of an assignment of a final judgment obtained by Branford Savings Bank against Lawrence Gabel in another prior action.

against the property a notice of lis pendens relating to another debt owed by Lawrence Gabel, which is not at issue in this appeal. Branford was represented by counsel and appeared in the foreclosure action.

On May 20, 1994, in a separate debt collection action, the Superior Court rendered judgment in favor of Branford against Lawrence Gabel for $96,751.64. *Branford Savings Bank* v. *G & A Realty*, Superior Court, judicial district of New Haven, Docket No. CV-92-0333944 (May 20, 1994). On June 24, 1994, Branford assigned to the plaintiff both that judgment and the debt related to the 1992 lis pendens.[2] The plaintiff in the present action is seeking to collect on the 1994 judgment.

In June, 1995, the court in the foreclosure action rendered a judgment of foreclosure by sale.[3] At that time, the fair market value of the property was $695,000 and the debt to Berkeley totaled $750,583. The Gabels appealed from the foreclosure judgment and, while the appeal was pending, Lawrence Gabel organized a group of investors, comprised of friends and family and headed by the defendant Norman Zolot, to fund a trust with the purpose of purchasing the note and mortgage from Berkeley. Berkeley agreed, prior to the issuance of a decision on the appeal, to sell the note and mortgage to Zolot for $250,000. The Gabels allegedly agreed with Zolot that they would no longer contest the judgment in the foreclosure action. Lawrence Gabel allegedly guaranteed repayment of the $250,000 used to acquire the note and mortgage from Berkeley.

---

[2] Although the debt related to the 1992 lis pendens was assigned to the plaintiff, it did not intervene in the foreclosure action. Copies of filings in the foreclosure action continued to be served on Branford's counsel.

[3] The court earlier had rendered summary judgment as to liability in favor of Berkeley after rejecting the defenses put forth by the Gabels. *Berkeley Federal Bank & Trust, FSB* v. *Gabel*, Superior Court, judicial district of Middlesex, Docket No. CV 94-0071109 (April 13, 1995). The court in its memorandum of decision characterized those defenses as "ludicrous." Id.

On December 24, 1996, this court affirmed the judgment of foreclosure by sale and remanded the case for the setting of a new sale date.[4] On December 30, 1996, Berkeley assigned the mortgage and endorsed the note to Zolot acting in his trustee capacity. On December 31, 1996, Elizabeth Gabel quitclaimed the property back to Lawrence Gabel. On February 12, 1997, the trial court granted Zolot's motion to be substituted as the plaintiff in the foreclosure action.[5] The court set a new sale date of June 14, 1997, and on that date, Zolot became the high bidder for the property. That bid was made with $450,000 of the debt acquired from Berkeley, which by then totaled $845,389.[6] The court approved the sale on July 7, 1997.[7] On or about August 21, 1997, Zolot transferred the property back to Elizabeth Gabel for no consideration. Elizabeth Gabel, Lawrence Gabel and their children continued to reside at the property as of the date of the institution of the present action.

On April 6, 2000, the plaintiff filed a seven count amended complaint against the defendants. The complaint alleged a scheme whereby the defendants fraudulently transferred assets of Lawrence Gabel to avoid the payment of the 1994 judgment debt that had been obtained by Branford and subsequently assigned to the plaintiff in violation of the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq. The first, second

[4] The judgment was affirmed per curiam. *Berkeley Federal Bank & Trust, FSB* v. *Gabel*, 43 Conn. App. 923, 686 A.2d 138 (1996).

[5] At oral argument before this court, Elizabeth Gabel's counsel stated that no trust documents were filed with the foreclosure court in connection with the substitution of Zolot as the plaintiff. Nothing in the record indicates that the relationship between Zolot and the Gabels was disclosed to the court or to Branford's counsel.

[6] Elizabeth Gabel in her brief claims that it was stipulated that the foreclosure court found the property's fair market value at that time to be $465,000. The plaintiff disagrees, claiming that the property's fair market value was still $695,000. The record is unclear as to who is correct.

[7] There is no indication in the record that Zolot thereafter sought a deficiency judgment. See General Statutes § 49-14.

and third counts alleged that Lawrence Gabel over a period of four years fraudulently transferred most of his income as well as other assets, not including real property, to Elizabeth Gabel. The fourth, fifth and sixth counts alleged fraudulent transfer of the property. The seventh count alleged a constructive trust as to the property.

On August 11, 2000, the plaintiff recorded a notice of lis pendens in the Essex land records. Elizabeth Gabel thereafter filed a motion seeking the discharge of the notice of lis pendens for lack of probable cause. In its probable cause determination, the court, *Arena, J.,* found the constructive trust count dispositive, noting that the end result of the multiple transfers of the property among the defendants was that Lawrence Gabel had avoided payment of the judgment assigned to the plaintiff while retaining beneficial enjoyment of the property. The court considered that given his continued residence on the property, Lawrence Gabel may have engineered the plans to effectuate the allegedly fraudulent transfers. Considering the timing, frequency and nature of the transfers, as well as the relationships between the parties and the fact that the transfers resulted in Lawrence Gabel's avoiding payment of the judgment assigned to the plaintiff, the court found that there was probable cause to support the seventh count seeking the imposition of a constructive trust. Accordingly, on October 4, 2000, the court denied Elizabeth Gabel's motion to discharge the lis pendens. The court did not address the plaintiff's claim that the motion should be denied on the ground that there was probable cause to support the plaintiff's fraudulent transfer counts.

On October 11, 2000, Elizabeth Gabel appealed from the court's denial of her motion to discharge the notice

of lis pendens.[8] In its brief, the plaintiff argued that the court's finding of probable cause as to the constructive trust count was correct and, further, there was also probable cause to support the fraudulent transfer counts, which would provide an alternate ground for affirming the court's denial of the motion. On July 31, 2001, while this appeal was pending, the court, *Gilardi, J.*, granted the defendants' motion to strike the counts of the plaintiff's complaint alleging fraudulent transfers.[9] The parties filed supplemental briefs to this court addressing whether, in light of the court's striking of the fraudulent transfer counts, the issue of whether those counts provided an alternate ground of affirmance had become moot. Additional facts will be provided as necessary.

"We note at the outset that the sole purpose of the hearing that gave rise to the trial court order resulting in this appeal was to determine whether there was probable cause to sustain the lis pendens. The merits of the case were not argued by counsel or decided by the trial court, but, rather, the hearing was conducted within the parameters of General Statutes § 52-325b."[10]

---

[8] Pursuant to General Statutes § 52-325c (a), the court's order is an appealable final judgment.

[9] The fraudulent transfer claims constituted counts four through nine of the plaintiff's second amended complaint. The court granted the defendants' motion to strike after finding that the plaintiff had failed to allege that the property had equity at the time it allegedly was transferred fraudulently. See General Statutes § 52-552b (2). The court refused to strike the constructive trust count, finding that "[t]he plaintiff has pleaded the elements necessary for imposition of a constructive trust."

[10] General Statutes § 52-325b provides: "(a) Upon the hearing held on the application or motion [for discharge of the notice of lis pendens] set forth in section 52-325a, the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim and, if the action alleges an illegal, invalid or defective transfer of an interest in real property, that the initial illegal, invalid or defective transfer of an interest in real property occurred less than sixty years prior to the commencement of the action. Any property owner entitled to notice under subsection (c) of section 52-325 may appear and be heard on the issue.

"(b) Upon consideration of the facts before it, the court or judge may:

*Corsino* v. *Telesca*, 32 Conn. App. 627, 631, 630 A.2d 154, cert. denied, 227 Conn. 931, 632 A.2d 703 (1993).

"A notice of lis pendens is appropriate in any case where the outcome of the case will in some way, either directly or indirectly, affect the title to or an interest in real property. . . . As [General Statutes] § 52-325 (a) provides, the purpose of [notice of lis pendens] is to bind any subsequent purchaser or encumbrancer as if he were made a party to the action described in the lis pendens. [A] notice of lis pendens ensures that the [litigant's] claim cannot be defeated by a prejudgment transfer of the property. . . . [T]he lis pendens procedure provides security for payment of the claim pending final resolution of the case. . . . The governing statutes contemplate that a property owner burdened by a notice of lis pendens may rightfully challenge its validity on two independent grounds: (1) the absence of probable cause to sustain the lis pendens claim; or (2) noncompliance with the procedural requirement of an effective lis pendens notice." (Citations omitted; internal quotation marks omitted.) *Corsino* v. *Telesca*, supra, 32 Conn. App. 632–33. In this case, Elizabeth Gabel argues that probable cause was lacking.

"Our rules regarding the standard of proof for establishing probable cause are well settled. It is important to remember that the plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The legal idea

(1) Deny the application or motion if (A) probable cause to sustain the validity of the claim is established or (B) in an action that alleges an illegal, invalid or defective transfer of an interest in real property, probable cause to sustain the validity of the claim is established and the initial illegal, invalid or defective transfer of an interest in real property occurred less than sixty years prior to the commencement of the action, or (2) order such notice of lis pendens discharged of record if (A) probable cause to sustain the validity of the plaintiff's claim is not established or (B) in an action that alleges an illegal, invalid or defective transfer of an interest in real property, the initial illegal, invalid or defective transfer of an interest in real property occurred sixty years or more prior to the commencement of the action."

of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Thus, we must determine whether the trial court's determination that probable cause exists to sustain the plaintiff's claim was clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id., 631–32.

Because the parties stipulated to the facts before the trial court at the hearing, the court's determination of probable cause was based on the inferences it drew therefrom. "It is axiomatic that the trier of fact may draw reasonable and logical inferences from the [stipulated facts]. . . . In doing so, finders of fact are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct. . . . Our review of the fact finder's inferences is limited to determining whether the inferences drawn are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 700–701, 651 A.2d 1286 (1995). With these principles in mind, we address the claims on appeal.

I

Elizabeth Gabel first argues that there was no probable cause to sustain the notice of lis pendens because the lack of equity in the property precluded the plaintiff from proving either its constructive trust claim or its fraudulent transfer claims. We disagree.

"A constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form . . . [or] when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." (Internal quotation marks omitted.) *Jaser* v. *Fischer*, 65 Conn. App. 349, 359, 783 A.2d 28 (2001); see also *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 113, 680 A.2d 1314 (1996). A trial court's determination that the imposition of a constructive trust is an appropriate remedy "must stand unless it is clearly erroneous or involves an abuse of discretion." *Wendell Corp. Trustee* v. *Thurston*, supra, 114.

By the time Zolot purchased the note and first mortgage on the property and was substituted as the plaintiff in the foreclosure action, the amount due on the note had reached $845,389. It is undisputed that that amount exceeded the fair market value of the property.[11] Elizabeth Gabel argues, therefore, that the plaintiff could not have been harmed by the allegedly wrongful transfer of the property to Zolot, because the plaintiff, as an unsecured creditor, had no ability to collect on its judgment prior to the transfer and remained in the same position thereafter. Consequently, she claims, there was

[11] We note that the fair market value of real estate fluctuates and that it cannot now be known what the fair market value of the property will be at some future time when the property is sold.

no probable cause in support of the imposition of a constructive trust. We are not convinced.

It is true that in the more usual case, "where a constructive trust is imposed the result is to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; in other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position in which he was before the defendant acquired the property." Restatement (First), Restitution, Constructive Trust § 160, comment (d), p. 643 (1937).

"There are some situations, however, in which a constructive trust is imposed in favor of a plaintiff who has not suffered a loss or who has not suffered a loss as great as the benefit received by the defendant. In these situations the defendant is compelled to surrender the benefit on the ground that he would be unjustly enriched if he were permitted to retain it, even though that enrichment is not at the expense or wholly at the expense of the plaintiff." Id., pp. 643–44; see also Restatement (First), Restitution, Unjust Enrichment § 1, comment (e), p. 14 (1937) ("[i]n [some] situations, a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust"); 5 W. Fratcher, Scott on Trusts (4th Ed. 1989) § 462.2, pp. 317–18; see, e.g., *Ocor Products Corp.* v. *Walt Disney Productions, Inc.*, 682 F. Sup. 90, 95 (D.N.H. 1988) (defendant buyer could be unjustly enriched by its wrongful submission of plaintiff manufacturer's design to lower cost manufacturer, even though defendant's lack of obligation to purchase from plaintiff produced no corresponding loss); *John A. Artukovich & Sons, Inc.* v. *Reliance Truck*

*Co.*, 126 Ariz. 246, 248, 614 P.2d 327 (1980) (defendant unjustly enriched when it used plaintiff's equipment without permission, even though equipment was leased to third party at the time so plaintiff suffered no loss); *Saunders* v. *Kline*, 55 App. Div. 2d 887, 888, 391 N.Y.S.2d 1 (1977) (defendant research director could be unjustly enriched by accepting $10,000 honorarium for plaintiff's discovery, even though plaintiff did not show that his loss corresponded to director's gain).

The United States Court of Appeals for the Third Circuit upheld the District Court's imposition of a constructive trust under circumstances similar to those of this case. In *Voest-Alpine Trading USA Corp.* v. *Vantage Steel Corp.*, 919 F.2d 206 (3d Cir. 1990), the District Court found that the defendants, through a series of planned transactions with their secured creditor in which they transferred all of the assets from their wholly owned corporation to a newly formed corporation, "were able to freeze out [the plaintiff, an unsecured creditor of the old corporation] and [the other unsecured creditors] while maintaining for themselves an equity interest in, and full effective control over, the new firm . . . ." Id., 209. The transfer of the assets was "structured through a foreclosure by [the secured creditor] in order to launder the assets [in question] and cleanse [the defendants] of [their] unsecured debt." (Internal quotation marks omitted.) Id.

The overall dynamic of the transactions in *Vantage Steel Corp.* bears strong resemblance to that alleged here. In *Vantage Steel Corp.*, the defendant married couple owned a "troubled" corporation that had assets of about $1.7 million, secured debt of $1.5 million and unsecured debt of about $800,000, about half of which was owed to the plaintiff. Id. In this case, Lawrence Gabel, at the time foreclosure proceedings commenced, owned property with a fair market value of $695,000 that was encumbered by a $750,583 debt and also owed

unsecured debt that included the plaintiff's $96,751.64 judgment.

In *Vantage Steel Corp.*, the defendants arranged with their secured creditor, a bank, for a series of transactions to occur simultaneously. First, the bank foreclosed on all of the assets of the old corporation, which it was entitled to do pursuant to the parties' loan agreement. The new corporation controlled by the defendants then purchased all of the assets of the old corporation, with the assistance of loans and credit extended by the bank. The new corporation purchased the inventory of the old corporation from the bank for only $513,645, although its fair market value was at least $1 million. On the next working day, the new corporation opened for business with the same officer (one of the defendants), address, staff, office, telephone number and assets that the old corporation had had prior to the aforementioned transactions. The old corporation had no assets but continued to owe its unsecured creditors, among them the plaintiff, some $800,000. The assets, now owned by a new entity, could not be reached by the unsecured creditors, although the defendants, through their ownership of the new corporation, continued to have full use of those assets.

In this case, according to the stipulated facts and reasonable inferences drawn therefrom, Lawrence Gabel arranged for Zolot, a confidant, to become his secured creditor by Zolot's purchase of Gabel's note and mortgage from Berkeley at a deep discount while Gabel actively contested the foreclosure judgment that Berkeley had obtained. Zolot then foreclosed on the property, which he was entitled to do as the substituted plaintiff in the foreclosure action. Through his alleged guaranty of repayment of the funds in the trust and his collusion with Zolot, Lawrence Gabel, in effect, was able for $250,000 to repurchase the property, which was

worth either \$465,000 or \$695,000.[12] By having Zolot, as trustee, distribute the property to Elizabeth Gabel, a different person, Lawrence Gabel was able to continue using and enjoying the property as he did prior to the foreclosure although it now was free of the \$845,389 secured debt and also could not be reached by his unsecured creditors, among them the plaintiff.

The District Court in *Vantage Steel Corp.* found that the defendants had "used [the new corporation] as their instrument to attempt to take the assets of [the old corporation] free from [the plaintiff's] claim and to preserve their equity position in the business." Id., 210. It concluded that the defendants' conveyance of assets from the old corporation to the new corporation was a sham transaction that unjustly enriched the defendants and imposed a constructive trust in favor of the plaintiff unsecured creditor on the defendants' equity interests in the new corporation.[13] The Third Circuit agreed that the remedy was "necessary in order to prevent the unjust . . . enrichment of the [defendants] through the conveyance of the [old corporation's] assets for less than fair value and their possession of the proceeds of that conveyance [through their control of the new corporation]." Id., 215.

[12] See footnote 6.

[13] It should be noted that the District Court also found that the transactions in *Vantage Steel Corp.*, viewed as a whole, amounted to violations of Pennsylvania's Fraudulent Conveyance Act, 39 Pa. Cons. Stat. §§ 354 through 359. *Voest-Alpine Trading USA Corp.* v. *Vantage Steel Corp.*, supra, 919 F.2d 214. In this case, as previously explained, the court did not consider the plaintiff's fraudulent transfer claims in making its determination of probable cause and thereafter, those claims were stricken. "[I]t is frequently said that a constructive trust is imposed as a remedy for fraud." 5 W. Fratcher, supra, § 462, p. 302. Nonetheless, "there are numerous situations in which a constructive trust is imposed in the absence of fraud . . . . It is sometimes added that fraud may be 'constructive' as well as actual, which is merely an expression of the idea that a constructive trust may arise in the absence of fraud." Id., 303.

After our review of the stipulated facts in this case, the law of constructive trusts and the persuasive reasoning of an analogous case, we are convinced that the court, after a trial on the merits, could find that the defendants here similarly were unjustly enriched and that a constructive trust is an appropriate remedy. We therefore conclude that it was not clearly erroneous for the court to find, on the basis of the plaintiff's constructive trust claim, that there was probable cause to sustain the notice of lis pendens.[14]

## II

Elizabeth Gabel also argues that there was no probable cause to sustain the notice of lis pendens because the plaintiff's claims were barred by the doctrine of collateral estoppel.[15] We disagree.

Whether the court properly applied the doctrine of collateral estoppel is a question of law for which our review is plenary. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 466, 778 A.2d 61 (2001). "The fundamental principles underlying the doctrine are well established. Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue

---

[14] Because we so conclude, we do not reach the issue of whether there is probable cause as to the fraudulent transfer counts so as to provide an alternate ground of affirmance, nor do we address whether that issue is moot in light of the court's subsequent striking of those claims. See footnote 9.

[15] Elizabeth Gabel also argues that the court improperly failed to consider her collateral estoppel and res judicata claims when ruling on the motion to discharge the notice of lis pendens. The court in its memorandum of decision did "note" that it was "inappropriate" to address those claims in the present procedural context, and opined that collateral estoppel and res judicata instead should be pleaded specifically as affirmative defenses. The court, however, prefaced that comment with three pages of substantive analysis of the collateral estoppel and res judicata claims. Furthermore, the plaintiff does not argue that they were improperly addressed. We therefore conclude that the court did consider those claims and leave for another day the question of whether they properly were raised in a motion to discharge the notice of lis pendens.

was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action*. It also must have been actually decided and the decision must have been necessary to the judgment." (Emphasis in original; internal quotation marks omitted.) Id.

"An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Emphasis in original; internal quotation marks omitted.) *R R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 257 Conn. 466; see also *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 260, 773 A.2d 300 (2001); *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 773, 770 A.2d 1 (2001).

To render the judgment of foreclosure in *Berkeley Federal Bank & Trust, FSB* v. *Gabel*, Superior Court, judicial district of Middlesex, Docket No. CV 94-0071109 (April 13, 1995), the trial court needed to determine who owned the note and mortgage, and whether the Gabels had defaulted on the note. See, e.g., *Webster Bank* v. *Flanagan*, 51 Conn. App. 733, 750–51, 725 A.2d 975 (1999). In addition, the court considered a number of special defenses raised by the Gabels, all of which were based on 12 U.S.C. § 1701x (c) (5), a section of the National Housing Act pertaining to housing for low and moderate income families. After the foreclosure judgment was affirmed on appeal, the court granted without objection Zolot's motion to be substituted as the party plaintiff, to which was appended documentation evidencing the assignment of the note and mortgage from Berkeley to Zolot.

The issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched. *Jaser* v. *Fischer*, supra, 65 Conn. App. 359. There is no indication that the plaintiff or its predecessor in interest, at any time during the foreclosure proceedings, raised the issues related to a constructive trust in the pleadings or otherwise submitted them for determination, nor is there any indication that they were actually determined by the court. Because the issues of fraud and unjust enrichment were not fully and fairly litigated in the foreclosure action, the plaintiff is not collaterally estopped from raising them in the present action.

We conclude that the court's determination that the plaintiff's constructive trust claim was not barred by collateral estoppel was proper.

### III

Elizabeth Gabel also argues that there was no probable cause to sustain the notice of lis pendens because the plaintiff's claims were barred by the doctrine of res judicata. We disagree.

The applicability of res judicata raises a question of law that is subject to our plenary review. *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 594, 726 A.2d 502 (1999). "[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, *but also as to any other admissible matter which might have been offered for that purpose.* . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Emphasis added; internal quotation

marks omitted.) *Milford* v. *Andresakis*, 52 Conn. App. 454, 462–63, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999).

"[W]e recognize that a decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of [a party] in the vindication of a just claim. . . . The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . . We review the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. . . . [T]he scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Citation omitted; internal quotation marks omitted.) Id., 463.

"We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional

test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 597–98, 715 A.2d 807 (1998); see also 1 Restatement (Second), Judgments § 24, p. 196 (1982).

Elizabeth Gabel argues that the doctrine of res judicata precludes the plaintiff from litigating its constructive trust claim because the plaintiff, or its predecessor in interest, did not contest the substitution of Zolot as plaintiff in the foreclosure action, nor did it attack the propriety of the transfer of the property to Zolot when the court approved the foreclosure sale. She claims, in essence, that the plaintiff could have asserted its claim in the foreclosure action and, therefore, is prevented from asserting it now. That argument is unpersuasive.

The plaintiff in its constructive trust count alleged unjust enrichment resulting from a series of actions and transactions, only some of which predated or were encompassed by the foreclosure proceedings. Specifically, the transfer of the property from Zolot as trustee to Elizabeth Gabel, which gave rise to her alleged unjust enrichment, occurred subsequent to the court's grant of the committee's motion for approval of the foreclosure sale and, necessarily, subsequent to Zolot's substitution as the plaintiff in the foreclosure action. As such, part of the conduct complained of occurred *after* the judgment alleged by the defendants to have preclusive effect. Pursuant to a comment to the Restatement section articulating the transactional test for res judicata, which Connecticut cases employ, "[m]aterial operative facts occurring *after* the decision of an action with respect to the same subject matter may in themselves, or *taken in conjunction with the antecedent facts*, comprise a transaction which may be made the basis of a second action not precluded by the first." (Emphasis added.) 1 Restatement (Second), supra, § 24, comment

(f), p. 203; see, e.g., *Lawlor* v. *National Screen Service Corp.*, 349 U.S. 322, 327–28, 75 S. Ct. 865, 99 L. Ed. 1122 (1955) (prior conspiracy action does not preclude second conspiracy action against same defendant where plaintiff relies on conspiratorial acts postdating judgment in first action); *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 319, 460 A.2d 1277 (1983) (adjudication that ground for termination of parental rights did not exist at one time does not mean ground has not arisen at later time); *Kimmel* v. *Iowa Realty Co.*, 339 N.W.2d 374, 379 (Iowa 1983) (successive actions for fraud, breach of fiduciary duty allowed where there are continuing wrongs or significantly changed circumstances).[16]

Thus, the transfer of the property to Elizabeth Gabel *after* the approval of the foreclosure sale, taken in conjunction with Zolot's substitution as the plaintiff and the purchase of the property in the foreclosure action, comprise a transaction that may be made the basis of a constructive trust action not precluded by the foreclosure action. We agree with the plaintiff that the entire scheme of which it complains was not accomplished until after the foreclosure action was over. To conclude that its claim is now barred by res judicata would be to require omniscience in litigation.

"[U]nderlying the standard [embodied in the transactional test] is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim." 1 Restatement (Second), supra, § 24, comment (b), p. 199. Because the plaintiff's con-

---

[16] See also 46 Am. Jur. 2d 841–42, Judgments § 567 (1994) (An "earlier adjudication is not permitted to bar a new action to vindicate rights subsequently acquired, even if the same property is the subject matter of both actions. . . . [A] judgment is not res judicata as to rights which were not in existence at the time of the rendition of the judgment.")

structure trust claim concerns operative facts occurring after Zolot was substituted as plaintiff and after the foreclosure sale was approved, we conclude that the court's determination that the plaintiff's constructive trust claim was not barred by res judicata was proper. As the plaintiff's constructive trust claim is not barred by either collateral estoppel or res judicata, the court's finding that there was probable cause to support the notice of lis pendens was not clearly erroneous.

## IV

Elizabeth Gabel also claims that the court improperly denied her motion to reargue. We disagree.

"We review claims that the court improperly denied a motion for reargument under the abuse of discretion standard. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Citation omitted; internal quotation marks omitted.) *Murray* v. *Murray*, 65 Conn. App. 90, 102, 781 A.2d 511, cert. denied, 258 Conn. 931, 783 A.2d 1029 (2001); see also *Vogel* v. *Maimonides Academy of Western Connecticut, Inc.*, 58 Conn. App. 624, 631, 754 A.2d 824 (2000). Because we have concluded that the court properly denied the defendant's motion to discharge the notice of lis pendens, the court did not abuse its discretion in denying the defendant's motion to reargue.

The judgment is affirmed.

In this opinion the other judges concurred.