[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff, Wanda Reynolds, against the defendant, Gerald Smith, arising out of their relationship in a business known as Smith Enterprises, Inc. The action is brought in nine counts. Count One is a request for an accounting. Count Two alleges a conversion. Count Three is for theft. Count Four is for misrepresentation and fraud or false representation. Count Five is for wrongful termination of medical benefits. Count Six is for dissolution of the corporation. Count Seven is for the court to find the existence of a Constructive Trust. Count Eight alleges a breach of contract and Count Nine claims the existence of an Unfair Trade Practice.
The defendant, in his answer, has essentially denied the material allegations of the complaint. In addition, the defendant has filed three special defenses, the first special defense alleging that, if there were any damages suffered by the plaintiff, they were the result of her own conduct either negligent or intentional. Secondly, that she has been paid for her interest in the corporation. The third special defense was that the CUTPA claim was without merit since this was a commercial matter. In addition, the defendant has filed a counterclaim alleging that the plaintiff has misused corporate funds for her own personal use without any right or permission and that such action constituted a theft and is seeking treble damages pursuant to Conn. General Statutes § 52-564.
The plaintiff has denied the allegations of the defendant's counterclaim.
Originally, the defendant was the sole proprietor of a business known as Smith's Texaco. In 1978, the parties became involved with one another in the operation of Smith's Texaco. A convenience store was added to the operation and, in August of 1979, they incorporated their activities and became known as Smith's Texaco Service Station, Inc. The two incorporators were the plaintiff and the defendant with the plaintiff listed as the President and Director and the defendant as Secretary, CT Page 12918 Treasurer and Director. The plaintiff was appointed as the Statutory Agent for service of process. There were ten outstanding shares issued with Wanda Reynolds being issued five shares and Gerald Smith five shares.
The parties disagree as to how the corporation was capitalized. The plaintiff alleges that she contributed $15,000.00 in cash and that the defendant contributed the assets of Smith's Texaco. The defendant denies this alleging that the plaintiff did not contribute to the incorporation as claimed and that he gave her the five shares of stock as a token of his love for her.
During this time, the defendant's property was liened by the Internal Revenue Service as well as the City of Ansonia for the taxes owed. The plaintiff claims that her funds went to pay off these debts and clear the liens from the property.
All of the documents filed with the State of Connecticut from 1979 through 1996 were prepared and filed by the plaintiff, Wanda Reynolds, as an officer and director of the corporation. On October 1, 1996, the corporate name was changed to Smith Enterprises, Ltd. This came about by Texaco directing that the name Texaco be deleted from the name of all independent contractors.
On October 3, 1997, the annual report was filed with the Secretary of State. This report indicated that Gerald Smith was both the President and Director and that Wanda Reynolds was the Secretary Treasurer. Handwritten were the words "Court action pending." This document was filed by Smith's daughter, Melissa.
In 1986, their marriage faltered and Gerald Smith, on July 1, 1986, filed a complaint with the Superior Court seeking a dissolution of their marriage. A Cross Complaint was filed by the then defendant, Wanda Reynolds, and their marriage was dissolved on January 8, 1988 as an uncontested matter. The judgment indicated that the property of the parties had been distributed to their mutual satisfaction and there was to be no alimony paid to either party. Both parties in their financial affidavits indicated they were the owners of five shares of Smith Enterprises. It is Mr. Smith's present claim that Reynold's five shares were turned over to him at that time, although the Separation Agreement makes no reference to any such transfer. The agreement does, however, indicate that he is the owner of 55 Buckingham Drive, Beacon Falls, and her affidavit indicates that she is the owner of 77 Fairview Commons, Southbury. Testimony indicated that Reynolds quitclaimed to Smith her interest in the Beacon Falls property and that Smith gave to Reynolds a CT Page 12919 check in the amount of $100,000.00 to purchase the Southbury property. These funds came from the sale of properties which they had acquired during their marriage.
The documents filed during the dissolution of their marriage and subsequent events as evidenced by the testimony in this case leads the court to believe that the stock was not transferred at the time of the dissolution and is presently owned by the plaintiff, Wanda Reynolds, and the court so finds.
It was the testimony of Mr. Smith that he never read these documents and in fact never read any documents. He being a man of substantial business experience, it is hard for the court to believe that he never read documents of a legal nature and to which he had to attach his oath as to their veracity. His attorney at the time was in fact making demand upon her to turn over the shares which are the center of this dispute long after the dissolution of their marriage. Also, in a previous suit between the parties filed in this court and later withdrawn, the defendant herein filed an affidavit on July 9, 1997 in which he acknowledges that the plaintiff herein owns five shares of stock in the corporation. This is several years after the dissolution of their marriage.
In her brief, the plaintiff indicates that she is not pursuing Count Nine of her complaint which alleged an unfair trade practice, or Count One requesting an accounting. Therefore, the court will not consider Counts One and Nine and considers them to be abandoned.
It is the function of the court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. AmericanHeritage Agency, Inc. v. Gelinas, 62 Conn. App. 711, 717.
The plaintiff claims a conversion of her interest in the corporation and, in Count Three, a statutory theft pursuant to § 52-564 of the General Statutes. A "conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." Discover Leasing, Inc. v. Murphy,33 Conn. App. 303, 309, 635 A.2d 843 (1993)
"Conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." Polivy v. Air One, Inc., 46 Conn. App. 573, 577,70 A.2d 71, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997)
To prove a prima facie case of conversion, one must establish (1) that the property belonged to the plaintiff, (2) that the defendant deprived CT Page 12920 the plaintiff of the property for an indefinite period of time, (3) that the defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed the plaintiff.
Statutory theft is synonymous with larceny under General Statutes § 53a-119. Lander v. Peck, 11 Conn. App. 161, 165, 526 A.2d 539
(1987). To establish a prima facie case of statutory theft one must demonstrate (1) that the property belonged to the plaintiff, (2) that the defendant intentionally deprived the plaintiff of the property, and (3) that the defendant's conduct was unauthorized.
Conversion can be distinguished from statutory theft as established by section 53a-119 in two ways. First, statutory theft requires an intent to deprive another of his property; second, conversion requires the owner to be harmed by a defendant's conduct. Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion.
To establish the existence of a statutory theft, the plaintiff must satisfy a higher standard of proof, namely, clear and convincing evidence in order for the trial court to award treble damages pursuant to Section52-564 of the General Statutes. Schaffer v. Lindy, 8 Conn. App. 96, 104,511 A.2d 1022 (1986)
The defendant has, in effect, seized the plaintiff's interest in the corporation. Fifty percent of the corporation belonged to the plaintiff. The defendant, by his conduct threatening her if she entered upon the property, clearly showed his intention to deprive her of her share. Furthermore, the defendant was not authorized to do so.
The plaintiff Reynolds' interest in the property the court finds to be held in a constructive trust. "A constructive trust arises . . . when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." (Internal citations omitted.) Cadle Co.v. Gabel, 69 Conn. App. 279 (2002).
"Where a constructive trust is imposed, the result is to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; in other words, the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position of which he was before the defendant acquired the property." (Internal citation omitted.)Cadle v. Gabel, supra, 289-290. CT Page 12921
The defendant knew when he threatened1 the plaintiff with arrest if she were to place foot upon the property that she owned a one-half interest in the property and that he was thus holding captive her one-half interest, thereby being enriched. A constructive trust thus came into being.
The court finds that the plaintiff was improperly excluded from the Pension Plan and the Profit Sharing Plan. When the plans were initiated in 1986, the plaintiff was included. Subsequently, in March of 1996, a letter was sent to the then accountant, the sending of which was agreed upon by the defendant, setting forth that for eight of the ten years of the plan no information was provided as to the respective interests of the plan members. In 1997, the accountant recreated the paperwork for the prior eight years which alleged that the plaintiff had no interest in the plans. The plaintiff, however, testified that during these years except for 1989, she worked the necessary hours to qualify and be included in the plans. This testimony was never contradicted, in fact, a time log showed that in the year 1995, the plaintiff worked some 1135 hours which would have qualified her for the plans. In the plaintiff's brief, she makes a claim for $10,000.00 in the Pension Plan and $7,640.00 in the Profit Sharing Plan.
The court finds the issues for the plaintiff, finding the plaintiff to have a one-half interest in the corporation. In addition, the court awards to the plaintiff the sum of $14,000.00 representing her damages for the illegal cancellation of her medical insurance. The defendant admits to the cancellation of her insurance and that no notice was given the plaintiff. Furthermore, $10,000.00 and $7,640.00 is awarded the plaintiff for her interest in the Pension Plan and the Profit Sharing Plan respectively.
As for the defendant's counterclaim, the court finds that the use of any corporate funds by the plaintiff occurred with the knowledge and acquiescence of the defendant. In fact, the evidence discloses that funds were appropriated from the corporation by and with the acquiescence of both parties. The court finds for the plaintiff on defendant's counterclaim.
The court, having previously entered an order for the appointment of a receiver, now appoints Attorney Peter Stark. The receiver is empowered to assume control over the assets of the corporation and to see to the payment of any accounts payable.
He is also empowered to sell the assets of the corporation and to pay CT Page 12922 any liabilities that the corporation may have.
In the event of a sale, the defendant shall first be given the opportunity to purchase the interest of the plaintiff therein.
Judgment may enter in accordance with the above
The Court
By ___________________ Curran, J. CT Page 12923