## STEVEN R. TREVORROW *v.* DIANE D. MARCUCCIO
### (AC 31513)

Gruendel, Beach and Sullivan, Js.

Argued September 21—officially released November 23, 2010

*B. Paul Kaplan*, for the appellant (defendant).

*Kevin D. Wickless*, for the appellee (plaintiff).

GRUENDEL, J. The defendant, Diane D. Marcuccio, appeals from the judgment of the trial court imposing a constructive trust over certain assets of her business in favor of the plaintiff, Steven R. Trevorrow. On appeal, the defendant's sole claim is that the court improperly determined that she had been unjustly enriched by a "loan" from the plaintiff to her business. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to the resolution of the defendant's appeal. Sometime before December, 2005, the defendant and her sister, Patricia Gilson, founded a metal works business known as Quality Job Shop (Quality). Thereafter, Gilson and her husband, Robert Gilson, loaned Quality $65,000 to purchase a lathe and a milling machine for use in Quality's business. Although the business initially operated smoothly, the defendant and her sister agreed to dissolve Quality after several months. Undeterred, the defendant wanted to remain in business and approached the plaintiff, a personal friend, seeking a loan to repay the Gilsons the $65,000 originally used to purchase the lathe and milling machine. The plaintiff, who was himself interested in owning a business, refused to lend money to the defendant but, instead, offered to enter into a new partnership with her in exchange for providing the funds needed to repay the Gilsons.

Subsequently, in June, 2006, the parties negotiated an oral partnership agreement (agreement) that required the plaintiff to pay the Gilsons $56,400 in satisfaction of the preexisting loan and deposit $8600 into the new partnership's bank account. To secure financing for this endeavor, the plaintiff obtained a home equity loan in the amount of $65,000 and further agreed "to work long hours and to acquire the skills necessary

to operate the milling machine and the lathe"[1] so as to contribute actively to the partnership business. The parties also agreed that the new partnership would be called Oneco Metalworking, LLC (Oneco), that "repayment of the plaintiff's monthly home equity loan would take priority over all other [Oneco] expenses and that the parties would split any profits on a [52 percent/48 percent] basis, with the defendant receiving 52 percent and the plaintiff receiving 48 percent." For her part, the defendant agreed "to provide the milling machine and lathe and to work long hours" as well. Finally, the parties agreed that "they would meet with an attorney and take steps to formalize their partnership and to create a limited liability company."

This arrangement worked well until December, 2006, when the plaintiff noticed "a discrepancy between the amount of money which should have been in [Oneco's bank] account and the checks going out," which the plaintiff "believed were payments by the defendant for personal expenses unrelated to Oneco" operations. Additionally, despite several requests by the plaintiff, the defendant repeatedly delayed formalizing the parties' business relationship and at no time during their business relationship was a limited liability company formed. One day in late March, 2007, the plaintiff arrived at Oneco, "picked up his [tools] and his personal belongings and [never returned] to the business."

The plaintiff commenced this action by complaint filed June 25, 2008, alleging, inter alia, a breach of fiduciary duty by the defendant with respect to a constructive trust over the moneys paid by the plaintiff to the Gilsons.[2] More specifically, the plaintiff claimed that

---

[1] The plaintiff had no prior experience in the operation of this equipment; however, commencing in June, 2006, the plaintiff worked for the parties' business, originally as an apprentice and ultimately as a full-time machinist, acquiring the skills necessary to operate both machines.

[2] Although the complaint originally alleged six causes of action, the plaintiff was successful only on the fifth count, which was premised on a construc-

the defendant "breached her fiduciary duties to the [p]laintiff under [a] constructive trust [on the moneys paid to the Gilsons] by diverting the assets of [the] trust to herself, by wasting the assets, by spending the assets for personal use and gain, by failing to account to [the] [p]laintiff for the assets and by deliberately concealing her illegal, criminal, fraudulent and/or negligent acts." In response, the defendant denied any wrongdoing, and by way of a special defense, asserted that the plaintiff's home equity loan had been partially paid in the amount of $12,501.96. The defendant also filed a counterclaim, alleging that the plaintiff materially breached the parties' agreement by failing to deposit the $8600 into Oneco's account and by leaving Oneco abruptly, resulting in consequential and incidental damages.

Following a one day trial to the court in which both parties testified, the court, in a memorandum of decision filed August 21, 2009, ruled in favor of the plaintiff on the count alleging breach of constructive trust by the defendant. In so ruling, the court explained that, although the "defendant [was] innocent of any wrongdoing, [she had] . . . been unjustly enriched by her failure to completely repay" the plaintiff for his payment to the Gilsons. Thus, because "the defendant [had] the benefit of sole and unfettered ownership and use of the lathe and the milling machine, as well as the benefit of not repaying the loan [from the plaintiff] which [ultimately] financed these purchases," not requiring the defendant to repay the plaintiff the outstanding balance of the loan would be inequitable. Nonetheless, the court ruled in favor of the defendant with respect to both her special defense and counterclaim, thereby reducing the plaintiff's recovery by the amount of the previous repayment of the loan and the amount of overtime paid to

tive trust theory of recovery. In the present appeal, our analysis is limited to this fifth count.

Oneco's employee as a result of the plaintiff's abrupt departure.[3]

The defendant now claims that the court abused its discretion in imposing the constructive trust because the finding that the plaintiff's payment to the Gilsons was a "loan" to be repaid by Oneco, rather than a "buy-in" for which the plaintiff was solely liable, was clearly erroneous. In support of her claim, the defendant maintains that (1) imposition of the constructive trust was improper in light of the plaintiff's material breach of the parties' agreement; (2) assuming a constructive trust should have been imposed, the court improperly imposed the constructive trust on the defendant in her personal capacity, rather than on Oneco as a business entity; and (3) the court improperly imposed the constructive trust over property that was never held by the defendant. We are unpersuaded.

Before addressing the merits of the defendant's claim, we set forth the applicable standard of review. "A court's determination of whether to impose a constructive trust must stand unless it is clearly erroneous or involves an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Jarvis* v. *Lieder*, 117 Conn. App. 129, 143, 978 A.2d 106 (2009).

"A constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable

---

[3] For clarification, we note that the court ultimately rendered judgment in favor of the plaintiff for the outstanding balance of the loan, $39,938.04. The court reached this figure by deducting from the original $56,400 loan the amount that the plaintiff had been repaid, $12,501.96, as well as the amount expended by Oneco as a result of the plaintiff's sudden departure from Oneco, which the court found to be $3960.

conduct, artifice, concealment, or questionable means, *or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . .* [Therefore], [a] constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form . . . [*or*] *when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that* [*she*] *would be unjustly enriched if* [*she*] *were permitted to retain it.*" (Emphasis added; internal quotation marks omitted.) *Cadle Co.* v. *Gabel,* 69 Conn. App. 279, 288, 794 A.2d 1029 (2002). In this way, "[t]he issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud *or whether he or she has been unjustly enriched.*" (Emphasis added.) Id., 295.

In the present case, the court based its imposition of a constructive trust on the finding that the defendant had been unjustly enriched by her exclusive retention of the milling machine and the lathe, without repayment to the plaintiff of the moneys used to purchase those machines. Moreover, the court explained that, because the parties agreed that the plaintiff was to be repaid directly by Oneco from partnership income, it was clear that the plaintiff's payment to the Gilsons was "a liability of [Oneco itself], and not a 'buy-in' to the partnership."

Our review of the record reveals that the court had adequate evidence from which to conclude that the plaintiff's payment to the Gilsons in satisfaction of the preexisting loan to Quality was itself a loan to be repaid by Oneco, rather than a buy-in expense for which the plaintiff was exclusively liable. During trial, the plaintiff repeatedly testified, without objection by counsel for the defendant, that the payment to the Gilsons was to be repaid directly by Oneco and that, following the plaintiff's departure from the business, the defendant

"said . . . she would continue making the payments on the loan and that [the parties] would just consider [the payment] as a loan." Additionally, the record confirms that numerous checks were written directly from Oneco's operating account to the bank that had provided the plaintiff with financing to repay the Gilsons.[4] The defendant herself testified that she would have originally preferred that the plaintiff's payment to the Gilsons be treated strictly as a loan, as opposed to a capital offering by the plaintiff to buy into Oneco. Thus, the court's ruling that the plaintiff's payment to the Gilsons constituted a "liability of [Oneco] and not a 'buy-in' to the partnership" was not clearly erroneous.

Nor do we accept the defendant's contention that the court improperly imposed a constructive trust on the defendant in her personal capacity for property to which she herself never held title. At all times during the parties' business relationship, Oneco existed as a general partnership, and "all partners [in a general partnership] are liable jointly and severally for all obligations of the partnership . . . ." General Statutes § 34-327 (a). Because the plaintiff's payment to the Gilsons constituted an obligation for which Oneco was liable, the defendant is also jointly and severally liable for this obligation in her personal capacity as a general partner of Oneco. See General Statutes § 34-327 (a). Also, the parties do not dispute the fact that the plaintiff's payment to the Gilsons was in satisfaction of a preexisting loan made to Quality to purchase the lathe and milling machine and that the defendant retained exclusive ownership of this equipment following the plaintiff's departure from Oneco.

Finally, we conclude that the defendant's argument that the court abused its discretion by imposing the

---

[4] Several checks were also written directly to the plaintiff, who testified that he would, in turn, present them to the bank as payments for the home equity loan.

equitable remedy of a constructive trust in light of the plaintiff's breach of the parties' agreement also is meritless. Regardless of whether the plaintiff was in breach of the parties' agreement, the court acted within its discretion by imposing the equitable remedy of constructive trust on the basis of unjust enrichment on the part of the defendant. See *Cohen* v. *Cohen*, 182 Conn. 193, 203, 438 A.2d 55 (1980) ("[t]he imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment"). Although the defendant made the cursory allegation during oral argument that the plaintiff acted with "unclean hands" in pursuing his claim of constructive trust, this argument was not advanced by the defendant during trial or in her brief, and, as such, we decline to consider it further in this appeal. Accordingly, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.