Jeffrey TIBBETTS, Plaintiff,

v.

William STEMPEL, et al., Defendants.

Jeffrey Tibbetts, Plaintiff,

v.

Dorothy K. Robinson, et al., Defendants.

Jeffrey Tibbetts, Plaintiff,

v.

Richard C. Levin, et al., Defendants.

Nos. CIV.A.3:97 CV 2561(CFD), CIV.A.3:97 CV 2682(CFD), CIV.A.3:97 CV 2683(CFD).

United States District Court, D. Connecticut.

Jan. 20, 2005.

Jeffrey P.L. Tibbetts, Arlington, VA, for Plaintiff.

William J. Doyle, Jeffrey R. Babbin, Wiggin & Dana, New Haven, CT, for Defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

DRONEY, District Judge.

### I. *Introduction*

In these three cases, which were consolidated for pre-trial and discovery purposes, Jeffrey Tibbetts ("Tibbetts"), who is now proceeding pro se, brings a total of thirty-one counts against the defendants, which include Yale University, the Yale Corpora-tion and various officials and employees of Yale University.[1] The defendants' two motions for summary judgment are addressed in this opinion.[2] In their first motion, the defendants argue that twenty-seven of Tibbetts' claims in these cases are precluded by the judgment entered in *Tibbetts v. Dittes*, 3:95CV995(AVC), appeal dismissed, 01–7377 (2d Cir.2003), which was tried before then-Chief Judge Alfred V. Covello in the District of Connecticut. The motion also argues that there is no genuine issue of material fact in regard to the remaining four claims, and thus the defendants are entitled to judgment as a matter of law as to them as well.

On August 30, 2004, the defendants filed a supplemental motion for summary judgment, arguing that the four claims that were not precluded by the judgment in *Dittes* now are precluded by the judgment entered in *Tibbetts v. Yale Corp.*, No. C/A–00–2004–A (E.D.Va.2004), aff'd 47 Fed. Appx. 648, 2002 WL 31123873 (4th Cir. 2002).

For the following reasons, the defendants' motions for summary judgment are **GRANTED** as to all counts in the three consolidated actions.

### II. *Background*[3]

In 1985, Tibbetts enrolled at the Yale Divinity School ("YDS") in New Haven to

---

1. The amended complaints are the operative complaints in *Tibbetts v. Stempel* and *Tibbetts v. Levin*. The second amended complaint is the operative complaint in *Tibbetts v. Robinson*.

2. The motion for summary judgment was filed before these three actions were consolidated. Although the defendants only filed one motion, it was clear from its heading and language, as well as from its supporting memoranda, that it was directed at all three of the actions. As such, the motion for summary judgment was docketed in each of the cases. On February 14, 2002, all three actions were consolidated for pretrial and discovery pur-poses. Accordingly, all of the memoranda subsequently filed by Tibbetts and the defendants were docketed only in the first-filed case, *Tibbetts v. Stempel*.

The motion for summary judgment was originally filed on December 4, 2000, within the dispositive motion deadline of December 31, 2000, which was set forth in the Report of the Parties' Planning Meeting. The motion, however, was not actually docketed until January 8, 2001. Given that the delay in docketing was not due to late filing of the motion, the Court will not consider it to be untimely.

3. The facts recited in the text reflect the defendants' Local Rule 9(c)(1) statement and

pursue a master of divinity degree. Upon graduation, he planned to be ordained as a minister in the Presbyterian Church and to serve as a military chaplain in the U.S. Navy. In 1986, Tibbetts participated in a sermon delivery workshop during which students were required to deliver four sermons that were videotaped and then graded. Two of Tibbetts' fellow students suspected that he had plagiarized one of the sermons that he had delivered, and they informed YDS officials of their suspicions. Tibbetts eventually was called before the YDS Professional Studies Committee ("PSC"), a group charged with determining whether academic infractions have been committed. The PSC recommended that Tibbetts be expelled, yet be permitted to re-apply for admission to YDS if he satisfied certain specified conditions, which included informing the Presbyterian Church of the situation. He satisfied those conditions and returned to YDS in January 1989, planning to graduate in December of that year.

The second incident occurred in the summer of 1989, when Tibbetts was a student in a class taught by YDS Professor James Dittes. Tibbetts claims that because he received a short overseas assignment from the U.S. Navy, he would not have been present on campus to turn in his final two papers for the course taught by Dittes. Tibbetts maintains that he and Dittes agreed that Tibbetts would mail the two papers to Dittes on August 11, 1989,

the day he was scheduled to depart from Wilmington, Delaware, for his overseas assignment. Because Dittes claimed that he did not receive the papers, Tibbetts received a failing grade.[4] According to Tibbetts, Dittes then accused him of various types of forgery and fraud, and informed the Presbyterian Church of the incident. Tibbetts also claimed that Dittes accused him of lying and suffering from various psychological disorders, and that Tibbetts had been discharged from the American Baptist Church for acts of "moral turpitude" and "sexual promiscuity." Over the next three years, Yale officials pursued the forgery and fraud charges against Tibbetts before the PSC.[5] During that time, the Presbyterian Church dismissed Tibbetts as a ordination candidate. Tibbetts claims that these events forced him to give up a two-year position as an adjunct professor at the Beijing Foreign Affairs College. In 1992, after a hearing before the PSC, the charges were dropped and Tibbetts was allowed to graduate from YDS.

Tibbetts claims that the disciplinary proceedings had far-reaching consequences. In 1994 he was nominated as Special Assistant to the Deputy Assistant to the President on the White House Domestic Policy Council, and was later appointed to the position. Tibbetts claims, however, that he was forced to resign because Yale officials had informed the White House of their past disputes with Tibbetts. In addition, Tibbetts had attempted re-apply for

Tibbetts' Local Rule 9(c)(2) statement. (Since those statements were filed, the provisions set forth in Local Rule 9 have been redesignated as Local Rule 56) Because Tibbetts has proceeded pro se for much of this litigation, and his Local Rule 9(c)(2) statement did not comply with the specific requirements of that rule, the Court will also look to the complaint for relevant facts when necessary. *See Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986) (liberally construing pro se papers "assures that a person unfamiliar with the lawyerlike method" will not be disadvantaged); *cf Lopos*

*v. Ruocco,* 99 F.Supp.2d 207, 207 n. 2 (D.Conn.2000) (noting that pro se's failure to file a Local Rule 9(c)(2) statement did not result in the facts in the defendants' Rule 9(c)(1) statement being deemed admitted).

4. Tibbetts later insisted that he had mailed the papers.

5. The FBI may have conducted an investigation as well, but the details of the inquiry are not clear from the complaints.

ordination in the Presbyterian Church and in doing so, tried to obtain his student records from Yale under the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. He claims that the defendants refused to provide him with access to the documents, and that this barred him from readmission as an ordination candidate. Tibbetts also claims that the defendants accused him of using his White House position to influence his application for his student records, and that they refused to retract the allegations made to the Presbyterian Church.

### III. *Procedural History*

The first action arising out of the events recited above was *Tibbetts v. Dittes et al.,* 3:95CV00995(AVC), which was filed in the District of Connecticut on May 30, 1995, and assigned to Judge Covello.[6] The amended complaint in *Dittes,* dated January 23, 1996, contained four counts: (1) intentional infliction of emotional distress; (2) defamation; (3) breach of contract; and (4) intentional interference with prospective business advantage. On May 17, 1996, Judge Covello ruled that named defendants Adams and Huebner had not properly been served, and, therefore, they were dismissed as defendants. Tibbetts requested leave to file a memorandum that he claimed would show that those defendants were properly served. Despite

having had his initial request to file the memorandum granted, as well as four applications for extensions of time, Tibbetts' failed to file his memorandum. On April 11, 1997, Judge Covello denied Tibbets' fifth motion for an extension of time.

On June 2, 1997, Judge Covello granted Tibbetts' request for an extension of time until June 27, 1997, to further amend his complaint. Tibbetts did not file an amended complaint within this time period. On August 26, 1997, however, Tibbetts requested leave to file two amended complaints, which sought to add counts related to: (1) his suspension from YDS for plagiarism; (2) the academic misconduct charges brought against him in 1990 and the subsequent investigation; (3) his dispute with Yale over disciplinary records arising from the plagiarism and academic misconduct charges; (4) his 1994 resignation from his White House position; and (5) Yale's response to the *Dittes* lawsuit. On December 4, 1997, Judge Covello denied Tibbetts' request to amend on the grounds that it was untimely and that it would prejudice the defendants.[7] On December 8, 1997, as a result of his failure to successfully amend his complaint in *Dittes,* Tibbetts filed a new action, *Tibbetts v. Stempel et al.,* 3:97CV2561(CFD).[8] A few weeks later, on December 23, 1997, Tibbetts filed two more actions: *Tibbetts v. Robinson et al.,* 97CV2682(CFD)[9] and

6. The named defendants were: Dittes; Dwayne Huebner, who was the Associate Dean of Academic Affairs at the time; the Yale Corporation; and the Administrators and Faculty of the YDS, including Dean Thomas Ogletree, Admissions Director James Garrett, Former Professional Studies Committee Chairman Harry Adams, Director of Yale Summer School Penelope Laurens and YDS Registrar Detra MacDougall.

7. Specifically, Judge Covello stated: "In this case, the plaintiff seeks to amend more than two years after the filing of the original complaint and after the close of discovery. The plaintiff has failed to provide a satisfactory

explanation for the delay in filing the proposed amendment and permitting the amendment at this stage of the litigation, after the close of discovery, would prejudice the defendant."

8. The complaint named the following defendants: William Stempel and Dorothy Robinson (of the Yale Office of General Counsel); the President and Fellows of Yale ("the Yale Corporation"); and past Presidents and Fellows of Yale.

9. The complaint named the following defendants: Robinson and Stempel; the President

*Tibbetts v. Levin et al.*, 97CV2683(CFD).[10] All of these new cases were assigned to this Court.

On April 28, 1998, Judge Covello stayed his case pending the resolution of Tibbetts' bankruptcy proceeding in the Eastern District of Virginia, and gave Tibbetts thirty days from the date of that resolution to file an amended complaint in *Dittes*. The bankruptcy proceeding was concluded on December 4, 1998. Therefore, Tibbetts had until January 4, 1999, to file an amended complaint. Tibbetts failed to comply with this deadline. On December 29, 1999, however, Tibbetts filed another motion to amend his complaint. Judge Covello denied this motion as untimely, noting that "allowing the plaintiff to amend his complaint, adding four new causes of action, only 5 days before trial, and over two years since the close of discovery, would be prejudicial to the defendants." (*See* 3:97CV2561 Doc. # 52: Ex. V). The case then proceeded to trial. At the close of the evidence, Judge Covello granted the defendants' motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure with respect to the counts of breach of contract and interference with prospective advantage. The remaining two counts, defamation and intentional infliction of emotional distress, were submitted to the jury, which returned a defendants' verdict on both counts. On March 29, 2000, Judge Covello rendered judgment in accordance with the jury's verdict. Subsequently, Tibbetts filed a motion for a new trial, a motion to vacate the judgment, a motion for sanc-

tions, and a motion to disqualify the presiding judge. Those motions were denied. On March 30, 2001, Tibbetts filed a notice of appeal with the United States Court of Appeals for the Second Circuit, which indicated that he was appealing several issues, including "the issue of amending a party's pleadings."

■ Due to the notice of appeal filed in *Dittes*, this Court denied the defendants' motions for summary judgment in the instant three actions without prejudice. More specifically, this Court concluded that, given the defendants' reliance on the doctrine of res judicata and Tibbetts' status as a pro se litigant, it would be inappropriate to evaluate the *Dittes* judgment for preclusive effect prior to the Second Circuit's review of that judgment.[11] In so ruling, however, this Court noted that "[t]he defendants may revive the motions for summary judgment by filing a notice to that effect" after the issuance of the Second Circuit's opinion in *Tibbetts v. Dittes*.

On February 13, 2002, the defendants' motion to dismiss the *Dittes* appeal as untimely was denied by the Second Circuit. On September 16, 2003, however, Tibbetts' appeal was dismissed sua sponte due to Tibbetts' failure to abide by the schedule set forth in the Second Circuit's Civil Appeal Management Plan. On December 8, 2003, Tibbetts' motion for reinstatement of his appeal was denied. Consequently, on January 13, 2004, the defendants filed notice that their motion for summary judgement in the three consolidated actions was reinstated. The defendants and Tibbetts have since filed

and Fellows of Yale ("the Yale Corporation"); and past Presidents and Fellows of Yale.

10. The complaint named the following defendants: Richard Levin, the President of Yale; Robinson and Stempel; the President and Fellows of Yale ("the Yale Corporation"); past Presidents and Fellows of Yale; and Dittes.

11. However, "[a] final judgment in federal court can be the basis for claim preclusion despite the fact that an appeal is pending, or that the judgment may be subject to appeal in the future." 18 Moore's § 131.30[2][c][ii] (citing cases).

supplemental memoranda in support of, and against, that motion.

Connecticut is not the only district in which Tibbetts has brought an action related to his time at Yale. As mentioned, in 1998 Tibbetts filed a Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of Virginia in which he listed a debt to Yale University in the amount of $11,230.18. Apparently, Yale reached an agreement with the bankruptcy trustee to forgive the debt in exchange for a release from Tibbetts' various lawsuits. However, Tibbetts then converted his case to one under Chapter 13 of the U.S. Bankruptcy Code, thereby depriving the Chapter 7 trustee of his authority to settle the actions Tibbetts had pending against the defendants in Connecticut.[12] Yale, along with Tibbetts' student loan provider, moved to reconvert the bankruptcy case to Chapter 7. Prior to the resolution of that motion, however, the bankruptcy court granted Tibbetts' voluntarily petition to dismiss his case in December, 1998.

On December 1, 2000, Tibbetts brought an action against the Yale Corporation, Robinson, Stempel and various other parties connected to Yale in the Eastern District of Virginia, alleging that the defendants committed various torts in the course of the prior bankruptcy proceeding, and setting forth claims for abuse of process, malicious use of process, malicious prosecution, intentional infliction of emotional distress, and vexatious suit under Conn. Gen.Stat. § 52–568. On June 18, 2001, that district court granted the defendants' motion to dismiss with prejudice.[13] Tibbetts appealed to the Court of Appeals for the Fourth Circuit, which affirmed the district court's dismissal. *Tibbetts v. Yale Corp.*, 47 Fed. Appx. 648, 651 (4th Cir. 2002). Consequently, on August 30, 2004, the defendants in the instant three cases filed a supplemental motion for summary judgment here, arguing that this judgment also was entitled to preclusive effect as to certain counts described below in the instant three actions.

Therefore, the defendants' original motion for summary judgment and supplemental motion for summary judgment, both of which principally are grounded on the doctrine of res judicata, are now pending before the Court.

### IV. Summary Judgment Standard

■ In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of

---

**12.** As the Court of Appeals for the Fourth Circuit noted in a related proceeding: "The settlement provided that Yale would 'pay the trustee $4,000 in return for a full and complete release of any and all claims made by Tibbetts or the Trustee against Yale and related others.'" *Tibbetts v. Yale Corp.*, 47 Fed. Appx. 648, 651 (4th Cir.2002). The Fourth Circuit also noted, however, that "Tibbetts was loathe to relinquish his lawsuits ... [and he] filed a Motion to Convert his bankruptcy from Chapter 7 to Chapter 13." *Id.*

**13.** The Fourth Circuit described the full procedural history of *Tibbetts v. Yale Corp.* as follows:

On March 28, 2001, Tibbetts filed his First Amended Complaint. In early May, 2001, Defendants moved to dismiss. On May 8th, Tibbetts filed a Motion for Leave to Amend his complaint, which was dismissed without prejudice on May 18th. The court scheduled a hearing on Defendants' motions to dismiss for June 15, 2001. On June 8th, Tibbetts again filed a Motion for Leave to Amend Complaint. His proposed amendments, if allowed, would have added (I) factual support for the abuse of process, malicious prosecution, and vexatious suit counts; (ii) new counts for breach of contract and "malicious defense"; and (iii) USAF as a defendant in place of USA Group Foundation. On June 18th, the district court dismissed the case with prejudice, denying Tibbetts leave to amend without elaboration.

*Tibbetts v. Yale*, 47 Fed.Appx. at 651–52 (internal citations omitted).

material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 5(c)); *accord Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.[14] Summary judgment is an appropriate method for resolving a claim of res judicata. *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 712,

627 A.2d 374 (1993); *Media Group, Inc. v. Tuppatsch*, 298 F.Supp.2d 235, 241 (D.Conn.2003); *NAS Electronics, Inc. v. Transtech Electronics PTE, Ltd.*, 262 F.Supp.2d 134, 152 (S.D.N.Y.2003).

## V. Res Judicata

The defendants contend that the judgment in the *Dittes* case precludes twenty-seven of the thirty-one claims Tibbetts has asserted in the three pending actions, and that the judgment from the Eastern District of Virginia precludes the remaining four claims. As to the preclusive effect of *Dittes*, Tibbetts maintains that claim preclusion should not apply because he was not given a full opportunity to litigate his claims in that case. Tibbetts has not filed a response to the question of whether the judgment from the Eastern District of Virginia precludes the remaining four claims in the instant actions.[15]

**14.** This Court is aware that, in applying the summary judgment standard, the claims of a pro se litigant should be construed liberally; *Sawyer v. American Fed'n of Gov't Employees*, 180 F.3d 31, 36 (2d Cir.1999); and that "special solicitude" should be afforded pro se litigants who are confronted with motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988). Accordingly, when Tibbetts initially failed to respond to the defendants' motion for summary judgment, the Court provided notice to Tibbetts of the docketing of the defendants' motions, explained the nature of summary judgment, and instructed him to file a response to the defendants' motions by February 9, 2001. Tibbetts filed his response by that date, and over the course of several years, has supplemented that response with several memoranda and exhibits.

In addition, the Court notes that for a limited period of time, Tibbetts was represented by Attorney John Williams in these actions. Thus, several of Tibbetts' responsive pleadings, including his response to Levin's motion for summary judgment and his Local Rule 56(a)(2) statement, were filed with assistance of counsel. On December 7, 2004, Tibbetts terminated his relationship with his Attorney

Williams. Therefore, Tibbetts is now proceeding pro se once again.

**15.** On August 30, 2004, the defendants filed their supplemental motion for summary judgment and a motion to amend the scheduling order for consideration of that supplemental motion. On October 22, 2004, this Court granted the motion to amend, indicated that it would consider the arguments made in the supplemental motion for summary judgment and provided Tibbetts with twenty-one days to respond to that supplemental motion. On November 16, 2004, Attorney John Williams filed a response on behalf of Tibbetts. On December 7, 2004, this Court received a letter stating that Tibbetts' had terminated his relationship with Attorney Williams. This Court then granted Tibbetts' motion for an additional seven days in which to respond to all pending motions in the instant three actions. On January 6, 2005, the Court gave Tibbetts until January 19, 2005, to supplement his responses to the motions for summary judgment. Despite additional extensions of time, however, Tibbetts has failed to respond further to the defendants' supplemental motion for summary judgment, other than a "motion for a preclusion analysis" filed on December 13, 2004.

## A. Choice of Law

■ Although not briefed by either party, the Court concludes that Connecticut law controls the res judicata analysis applicable to the judgment entered in *Dittes*, and that the law of Virginia applies to the res judicata analysis applicable to the judgment entered in the Eastern District of Virginia. In general, "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Semtek International Incorporated v. Lockheed Martin Corporation*, 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). Federal common law, however, looks to the law that would be applied by state courts in the state in which the rendering federal diversity court sits. *Id.* As one district court has explained: "[W]hen a federal court sitting in diversity applies state substantive law as the rule of decision in a case, the preclusive effect of any decision by the federal court in that case is to be determined by the state preclusion law of the state in which the district court

sits." *NAS Electronics*, 262 F.Supp.2d at 152 (citing *Semtek*, 531 U.S. at 508, 121 S.Ct. 1021) [16]; *see also* 18 Moore's Federal Practice § 131.31[3][g][iii] (Matthew Bender 3d ed.) ("for example, if a federal district court in one state dismisses a diversity action on statute-of-limitations grounds, the identical suit will not be precluded in another state's courts unless the claim-preclusion law of the first state treats a dismissal on statute-of-limitations grounds as being 'on the merits' for claim-preclusion purposes").

Jurisdiction in *Tibbetts v. Dittes* was based on diversity of citizenship of the parties, and Connecticut substantive law was applied. Therefore, under *Semtek*, this Court must apply Connecticut preclusion law.[17]

Jurisdiction in *Tibbetts v. Yale Corporation* also was based on diversity of citizenship of the parties, and the substantive law of Virginia was applied. Therefore, under *Semtek*, this Court must apply the preclusion law of Virginia when addressing the

---

16. In *Semtek*, the plaintiff brought suit in California state court, and the defendants removed the case to California federal district court based on diversity of citizenship of the parties. The plaintiff's suit was then dismissed due to the plaintiffs' failure to comply with California's two-year statute of limitations. 531 U.S. at 499, 121 S.Ct. 1021. Following that dismissal, the plaintiff filed suit in Maryland state court, asserting the same claims under Maryland law, which were subject to a three-year statute of limitations. This action was dismissed based upon the doctrine of res judicata. *Id.* The Maryland Court of Special Appeals affirmed, and the Maryland Court of Appeals declined further review. *Id.* The United States Supreme Court granted certiorari, and concluded that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Id.*, at 508, 121 S.Ct. 1021. In addition, the Supreme Court concluded that the federal court should adopt "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* Consequently, the Supreme Court concluded

that the Maryland Court of Special Appeals erred in holding that the dismissal in California necessarily precluded the subsequent action in Maryland, as under California law a dismissal of an action on statute-of-limitations grounds by a California state court would not be claim preclusive. *Id*, at 509, 121 S.Ct. 1021.

17. This Court may also look to federal law, however, as there is no discernible difference between Connecticut and federal preclusion law. *See, e.g., Pike v. Freeman*, 266 F.3d 78, 90 n. 14 (2d Cir.2001) (the court made determinations about res judicata based upon federal law because "there appears to be no significant difference between New York preclusion law and federal preclusion law."); *see also Carlyle Johnson Machine Co., LLC v. April*, No. CV 970481243S, 2000 WL 234311 (Conn. Sup.Ct. Feb 10, 2000) (noting that, although federal res judicata law is broken out into four distinct "elements," and Connecticut res judicata law is not, substantively they are similar).

preclusive affect of *Tibbetts v. Yale Corporation*.

## B. *Analysis of the preclusive effect of Tibbetts v. Dittes*

 It is well established that "[t]he rule [of res judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim and demand, but as to any other admissible matter which might have been offered for that purpose.' The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (citation omitted); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). The underlying purpose of the doctrine of res judicata is: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *State v. Ellis*, 197 Conn. 436, 466, 497 A.2d 974, 989–90 (1985); *see also Joe's Pizza, Inc. v. Aetna Life & Casualty Co.*, 236 Conn. 863, 872, 675 A.2d 441, 446 (Conn.1996) (because res judicata "promotes judicial economy by preventing relitigation of issues or claims previously resolved . . . the appropriate inquiry . . . is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding").

 In sum, to prevail on a motion for summary judgment premised on res judicata, the movant bears the burden of showing that the earlier decision was (1) a final judgment on the merits; (2) by a court of competent jurisdiction; (3) in a case involving the same parties or their privies; and (4) involving the same cause of action, which is to say that both actions arise from the same common nucleus of operative fact. *Anaconda–Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 190 (2d Cir.1985); *Herendeen v. Champion International Corp.*, 525 F.2d 130, 133 (2d Cir.1975); *see also Dowling v. Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999) ("Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim.").[18]

---

18. At several points during these three consolidated cases, Tibbetts has mistakenly characterized the defendants' argument as one based on the doctrine of collateral estoppel (issue preclusion), and has argued that, under that doctrine, the defendants cannot demonstrate that he had a "full and fair opportunity" to litigate his issues in *Dittes*. *See Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995) (identifying a "full and fair opportunity for the litigation of the issues in the prior proceeding" as one of the four necessary elements of a claim of issue preclusion); *Virgo v. Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988) ("For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action"). "Although claim preclusion [res judicata] and issue preclusion [collateral estoppel] often appear to merge into one another in practice, analytically they are regarded as distinct." *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 712–13, 627 A.2d 374 (1993); *see also Whitley v. Seibel*, 676 F.2d 245, 249 (7th Cir.1982) ("Ordinarily an issue that is not litigated in one proceeding is not barred later—that is the basic difference between claim preclusion (res judicata) and issue preclusion (collateral estoppel)"); 18 Wright, Miller & Cooper, Fed. Practice & Procedure Juris.2d § 4402 (ex-

Tibbetts does not claim that the judgment in *Tibbetts v. Dittes* was rendered by a court lacking jurisdiction. Accordingly, the Court only will analyze the other three elements in order to determine if Tibbetts' claims in the instant three cases are precluded by the judgment in *Dittes*.

1. Final Judgment

■ First, the Court must determine whether the judgment in *Dittes* is a final judgment. "[A] judgment will ordinarily be considered final 'if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court . . .' [O]ne of the critical factors in determining whether a judicial determination is a final judgment for purposes of res judicata is whether it is also a final judgment for purposes of appeal." *Cadle Co. v. Drubner,* 303 F.Supp.2d 143, 147 (D.Conn.2004) (quoting *CFM v. Chowdhury,* 239 Conn. 375, 396, 685 A.2d 1108, 1119 (1996)).

On September 26, 2001, this Court denied the instant motions for summary judgment without prejudice, and with permission to reinstate after Tibbetts' appeal in *Dittes* had been concluded by the Sec-

ond Circuit. On September 16, 2003, Tibbetts' appeal in *Dittes* was dismissed, and his motion for reinstatement of appeal was denied. Accordingly, Judge Covello's underlying judgment, which was a final judgment for purposes of appeal, now is a final judgment for purposes of this res judicata analysis. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ("Federal appellate jurisdiction generally depends on the existence of a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment' "); *Cadle,* 303 F.Supp.2d at 147 ("one of the critical factors in determining whether a judicial determination is a final judgment for purposes of res judicata is whether it is also a final judgment for purposes of appeal"). In *Dittes,* judgment as a matter of law entered for the defendants on two counts, and the jury returned a verdict for the defendants on the remaining two counts. Tibbetts has failed to successfully appeal this judgment, and, therefore, that ended the litigation in *Dittes* on the merits and is a final judgment for this preclusion analysis.[19] *See Livesay,* 437 U.S. at 467, 98

plaining the terminology of res judicata). The defendants' motions for summary judgment clearly indicate that they rely entirely on the doctrine of claim preclusion. Therefore, this Court will limit its analysis to that doctrine, as set forth previously in the text of this ruling. *See Anaconda–Ericsson Inc.,* 762 F.2d at 190; *Dowling,* 248 Conn. at 373, 727 A.2d 1245.

19. Tibbetts argues in his Supplementary Brief in Opposition to Motion For Summary Judgment and Request for Leave to File Discovery Requests (3:97CV2561 [Doc.# 79]) that, "because the defendants prevailed in *Dittes* on technical procedural grounds, rather than on the merits, and because the plaintiff attempted to consolidate this case with *Dittes* but was rebuffed by [Judge Covello] it would be nothing less than a perversion of the doctrines of collateral estoppel and res judicata to permit defense counsel's TKO in the *Dittes* appeal

now to bar the plaintiff from the opportunity to have his claims against these defendants adjudicated on their merits." This is not an accurate assessment of the record in *Dittes*. Although the defendants did not prevail on the merits in the appeal, they did prevail on the merits before a jury and Judge Covello. Therefore, Tibbetts' contention that the defendants' prevailed in *Dittes* on technical grounds is not accurate. Second, the defendants "technical" victory on appeal is a result of Tibbetts' failure to abide by the procedural rules' governing civil appeals to the Second Circuit. While pro se litigants generally are afforded extra consideration by the courts, this consideration is not unlimited, and this Court sees no reason why the final judgment entered in *Dittes* should not be accorded preclusive effect. Moreover, this Court notes that the docket sheet for the *Dittes* appeal reveals that Tibbetts was represented for some portion of his appeal by attorney John

S.Ct. 2454.

2. Privity

■ The Court next must address whether the defendants in these three actions are in privity with those in *Tibbetts v. Dittes.* "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 367–68 (2d Cir.1995). In other words, "[o]ne whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Elec.,* 554 F.2d at 1233. The privity requirement "exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity. . . ." *Joe's Pizza,* 675 A.2d at 446 (quoting *Aetna Casualty & Surety Co. v. Jones,* 220 Conn. 285, 596 A.2d 414, 424 (1991)). "[T]he concept of privity has moved away from the conventional and narrowly defined meaning of mutual or successive relationships to the same rights or property. It now signifies a relationship between one who is a party of record and another who is a nonparty, but is sufficiently close to mandate the application of res judicata or collateral estoppel." *Mazziotti v. Allstate Ins. Co.,* 240 Conn. 799, 695 A.2d 1010, 1017 (1997). "Generally, an employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." 18 Moore's Federal Practice 3d. § 131.40[3][f] (Matthew Bender ed.).

■ Two Circuit Courts of Appeals have found that a university board sued in a prior action and employees of that board sued in a subsequent action are in privity for the purposes of claim preclusion. *See Kutzik v. Young,* 730 F.2d 149, 152 (4th Cir.1984) (prior action against board of regents precluded subsequent action against individual board members because the complaint did not allege that they "exceeded the scope of their authority as employees of the board when they made the decisions that are the subject of the complaint."); *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir.1976) (noting that a principal-agent relationship existed and, therefore, res judicata applicable because the individual was an employee of the Board which was the defendant in the prior action).[20] In *Tibbetts v. Dittes,* the defendants were Dittes and Huebner, both of whom were sued in their "personal and official capacities of The Yale Divinity School;" the Yale Corporation; and several individuals, sued only in their official capacities, who are listed as "The Administrators and Faculty of Yale Divinity School." In the three pending actions, the

T. Nugent. (*See* 3:97CV2561 (CFD) [Doc. # 60, Ex. C]).

20. Some courts have held that state university employees sued in their individual capacities are not in privity with a state university defendant from a prior action. *See, e.g., De Llano v. Berglund,* 183 F.3d 780, 781–82 (8th Cir. 1999); *Willner v. Budig,* 848 F.2d 1032, 1034 n. 2 (10th Cir.1988) ("Government employees in their *individual* capacities are not in privity with their governmental employer."). Because Yale University is a private entity, however, and not a state university, those cases would seem inapplicable to the instant cases.

defendants include: Levin; Stempel, Robinson, in both their individual and official capacities; the Yale Office of General Counsel; the "President and Fellows of Yale ('Yale Corporation')" who are sued in their official capacities; and the "Past President and Fellows of Yale (1992–1997) (former director liability)"; and Dittes.

Privity clearly exists for Dittes and the Yale Corporation, both of whom were named defendants in *Tibbetts v. Dittes.* The operative complaints in the pending actions also name past and present presidents and fellows of the Yale Corporation as defendants in their official capacity only.[21] This demonstrates that Tibbetts intended to sue them for the actions they took while they were acting within the scope of their duties as officials and fellows of Yale. As a result, the Court concludes that the relationship between those defendants, who are individual members of the Yale Corporation, and the Yale Corporation itself, which was a named defendant in *Dittes,* is sufficiently close so as for privity to exist. *See Kutzik,* 730 F.2d at 152.

As to the other individually named defendants (Stempel, Robinson, and Levin), Tibbetts has sued them in both their individual and official capacities. Levin is President of Yale; Robinson is its General Counsel; and Stempel is its Deputy General Counsel. The defendants contend that: "Yale University is a nonstock corporation, and it can act only through its agents, including its president and its lawyers." Tibbetts has not contested this statement. Moreover, Tibbetts' allegations do not indicate that any of the defendants' alleged actions were outside of the scope of their employment with Yale. Accordingly, the Court concludes that, although Tibbetts has sued them in both their individual and official capacities, his allegations relate solely to their actions as official representatives or agents of Yale. Therefore, the connection between these defendants and the Yale Corporation is sufficiently close as to establish privity.

In sum, the Court finds that, for purposes of a res judicata analysis, privity exists between the defendants named in *Dittes* and all of the defendants named in the three pending actions.

### 3. *The same cause of action.*

■ Next, the Court must determine the more difficult question of whether the issues in the instant actions involve the same cause of action as *Dittes.* "Although definitions of what constitutes the same cause of action have not remained static over time ... the dominant federal rule is based on a transactional approach to defining the claim." *F.D.I.C. v. Lenz,* 323 F.Supp.2d 342, 347 (D.Conn.2004) (internal citation and quotation marks omitted). As the Second Circuit has explained:

> "[R]es judicata or claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.... Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."

*Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 38 (2d Cir.1992) (internal citations and quotation marks omitted). It does not necessarily matter that a particular claim was not brought in the prior proceeding because "it is the facts surrounding the

---

**21.** Summonses were issued for each of them, but those summonses were not returned and appearances were not entered on their behalf.

transaction or occurrence which operate to constitute the cause of actions, not the legal theory upon which a litigant relies." *Expert Elec., Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

Connecticut also applies a transactional test in its res judicata analysis. As the Connecticut Supreme Court has explained:

We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.... In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action ....

*Delahunty v. Massachusetts Mutual Life Ins. Co.,* 236 Conn. 582, 590, 674 A.2d 1290 (1996) (citations omitted; internal quotation marks omitted); *see also* Restatement (Second) of Judgments § 24, cmt. c. ("[W]here one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction; a judgment based on the act usually prevents the person from

maintaining another action for any of the harms not sued for in the first action").

▇▇ Therefore, this Court must compare the operative complaints in the instant three actions to the pleadings and the judgment in *Dittes* in order to determine whether the "same transaction or connected set of transactions is at issue." *Woods,* 972 F.2d at 38. In *Tibbetts v. Stempel,* Tibbetts' claims relate to the following events: (1) the disciplinary proceedings arising from the Dittes incident, *see Stempel* Am. Compl. ¶¶ 8–20; (2) the defendants' alleged failure to provide Tibbetts with access to his student records, *see id.* ¶¶ 21–25; (3) Tibbetts' resignation from his White House position, *see id.* ¶¶ 26–46; and (4) the defendants' alleged failure to retract the allegations that were made to the Presbyterian Church, which Tibbets claimed prevented him from regaining his naval commission, *see id.* ¶¶ 47–50.[22] The events relating to the disciplinary proceedings and the denial of access to his student records are recited in detail in the amended complaint in *Dittes,* and thus were part of the transaction that was at issue in that case. (*See* Defs.' Ex. A; *Dittes* Am. Compl.¶¶ 48–150.)

In regard to his resignation from the White House position, Tibbetts also addressed this issue in the *Dittes* amended complaint. Specifically, the *Dittes* amended complaint states that the conduct of the defendants led to "the resignation of his position with the U.S. Government in December 1994 because of delinquent student loans which Tibbetts could not pay off because of the aforementioned malicious actions of the Defendants." (*Id.:* Am. Compl. ¶ 148.) Although Tibbetts did not provide further details of this incident, it is clear that this transaction served as a fac-

---

**22.** He also mentions the OGC's conduct during the *Dittes* case, *see id.* ¶¶ 51–54, which will be addressed more fully in the discussion concerning *Tibbetts v. Levin,* where those allegations are made in more detail.

tual predicate for claims set forth in *Dittes*. Therefore, the Court finds that the events set forth in ¶ 8–46 of the *Stempel* amended complaint involved the same transaction or connected set of transactions at issue in *Dittes*.

The events related to Dittes' alleged statements to the U.S. Navy and the Presbyterian Church, and the alleged injuries that flowed from those statements, are recited in detail in the amended complaint in *Dittes*, and thus were part of the transaction that was at issue in that case. For example, the amended complaint in *Dittes* contains numerous references to Dittes' alleged activity to prevent Tibbetts from joining the U.S. Navy or the Presbyterian Church, including an allegation that Dittes called the Presbyterian Church and stated, inter alia, that: Tibbetts had submitted fraudulent paperwork to the U.S. Navy; Tibbetts was a fugitive from the law in Connecticut for failure to pay rent; and Tibbetts had been seeking dual ordination in the American Baptist Church, but that he had been dishonorably discharged for moral turpitude and sexual promiscuity. As a result of these alleged activities by Dittes, the amended complaint states that Tibbetts suffered the following injuries: "(1) a forced resignation from the U.S. Navy Chaplain Corps., (2) a forced withdrawal as a candidate for ordination in the [Presbyterian Church] and (3) a compelled forfeiture of a teaching position ... in Beijing, China, under the auspices of the [Presbyterian Church]." The amended complaint further alleges that the defendants continued to pursue the charges against him before the PSC despite con-

vincing evidence of his innocence, and at no time did the defendants "make any reasonable effort to investigate any of these accusations" made by Dittes. Paragraphs 47–50 of the *Stempel* amended complaint allege that on February 13, 1995, the defendants did agree to remove "all documents referring to Yale's fraud allegation against Mr. Tibbetts," as well as "documents referring to a 'rumor' regarding Mr. Tibbetts and the American Baptist Church." [23] Paragraphs 47–50 further allege, however, that the defendants failed to respond to his September 5, 1996 letter requesting that, given the expungement of his student record, Yale retract statements previously made to the U.S. Navy and the Presbyterian Church, and that this failure to retract prevented him from regaining his commission in the U.S. Navy, as well as his ordination in the Presbyterian Church. Although Tibbetts' alleged September 5, 1996 letter [24] and the defendants' alleged failure to retract may have occurred after the filing of the amended complaint, this did not constitute a new harm unrelated to the transactions at issue in *Dittes*. To the contrary, it merely served to extend the damages, if any, that flowed from the alleged statements by Dittes, which were part of the transactions underlying the pleadings and judgment in *Dittes*. *See* Restatement (Second) of Judgments § 24, cmt. c. ("[W]here one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction"). Indeed, paragraph 49 alleges that the defendants' failure to respond to his Septem-

---

**23.** The Court notes that the defendants' February 13, 1995 agreement to remove certain contents of his student record predated the filing of the amended complaint in *Dittes*.

**24.** In their answer, the defendants denied the allegation set forth in ¶ 48, namely that Tibbetts sent the defendants a letter on Septem-

ber 5, 1996, requesting that they retract the prior statements made to the Presbyterian Church. Despite this denial, Tibbetts has not submitted a copy of the letter in support of his memorandum in opposition to the motion for summary judgment, and improperly rests on the allegation in the complaint. *See* Fed. R.Civ.P. 56(e)

ber 5, 1996 letter and retract the statements made to the Presbyterian Church was "[i]n furtherance of a conspiracy to interfere with or hinder [his] prospective employment opportunities." Therefore, the Court finds that paragraphs 47–50 relate to the same transaction or set of transactions at issue in *Dittes*, and do not involve a new transaction that occurred subsequent to the *Dittes* amended complaint. *Compare Cadle Co. v. Gabel*, 69 Conn.App. 279, 298, 794 A.2d 1029 (2002) (res judicata inapplicable to the second action because "the entire scheme of which [the plaintiff] complains was not accomplished until after the foreclosure action was over"); *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir.1996) (res judicata inapplicable because "[t]he claim that First Jersey defrauded customers in the sale, purchase, and repurchase of certain securities in 1975–1979 is not the same as the claim that First Jersey defrauded customers in the sale, purchase,

and repurchase of other securities in 1982–1985").[25]

In sum, the Court finds that all of the claims set forth in *Stempel* involve the same transaction or connected set of transactions as at issue in *Dittes*.

In *Tibbetts v. Levin*, the allegations mainly relate to the following events: (1) the incident with Professor Dittes, *see Levin* Am. Compl. ¶¶ 9–65, 70–74; (2) the resulting disciplinary proceedings, *see id.* ¶¶ 66–69; (3) the defendants' alleged attempts to prevent Tibbetts from being reinstated as an ordination candidate and to force his White House resignation by denying him access to his student records, *see id.* ¶¶ 75–85;[26] and (4) alleged misrepresentations, fraud, and delay committed by the defendants in *Dittes* and in their publications and admissions materials, *see id.* ¶¶ 86–107.[27] As explained previously in this ruling, the events surrounding the Dittes incident, the disciplinary proceedings, and the defendants' attempts to pre-

**25.** On August 26, 1997, Tibbetts filed another motion to amend his complaint in *Dittes*, seeking to add additional counts related to the alleged failure to retract, including a claim for negligent interference with prospective business relations. Judge Covello denied this motion because it was "made after an inordinate delay, no satisfactory explanation [was] offered for the delay and the amendment would prejudice the defendant." Tibbetts then included these claims in the subsequently filed *Stempel* complaint. This fact, however, does not change this Court's analysis, as the claims set forth in the proposed amended complaint in *Dittes*, and later in the *Stempel* complaint, involved the same transaction or set of transactions involved in the first amended complaint in *Dittes*. The proposed claims, such as negligent interference with prospective business relations, involved the same set of transactions as the claims already asserted for, inter alia, intentional interference with prospective advantage. Thus, Tibbetts was not seeking to assert new claims, but rather was seeking to assert new legal theories related to defendants' alleged conspiracy to keep him from gaining employment

with either the U.S. Navy or the Presbyterian Church. *See Cadle Co.*, 69 Conn.App. at 295, 794 A.2d 1029 ("The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it").

**26.** Although Tibbetts mentions the defendants' alleged refusal to retract the allegations made to the Presbyterian Church in the *Levin* complaint as well, those facts do not appear to support any of the counts set forth in that complaint. *See Levin* Am. Compl. ¶¶ 84–85.

**27.** Tibbetts alleges in the Background and Facts section of the *Levin* complaint that the defendants undertook dilatory actions in *Dittes* in order to force him into insolvency, and, as a result, he was forced to initiate the bankruptcy proceeding in the Eastern District of Virginia. In contrast to the *Robinson* complaint, however, Tibbetts fails to make any allegations concerning the defendants' conduct during that bankruptcy proceeding, but rather focuses solely on the defendants' conduct in the *Dittes* action.

vent Tibbetts from being reinstated are set forth in the *Dittes* amended complaint and thus were part of the transactions at issue in that case. The fact that Tibbetts has elaborated on those incidents in his complaint in *Tibbets v. Levin* does not change the fact that those underlying events occurred before the filing of the complaint and amended complaint in *Dittes*, involved the same transactions and, therefore, could have been brought in that case. *See Woods*, 972 F.2d at 38 ("res judicata ... prevents a party from litigating any issue or defense that *could have* been raised or decided in a previous suit") (emphasis added).

In regard to Counts Fourteen and Sixteen in *Tibbetts v. Levin*, which allege "Constructive Fraud/Negligent Misrepresentation," Tibbetts claims that Stempel filed a fraudulent affidavit in support of a motion to set aside a default in *Dittes*, asserting that he was not authorized to accept service for Huebner and Adams.[28] Tibbetts also claims that Yale's former and current president and fellows attempted to avoid responsibility in *Dittes* when the Office of General Counsel claimed that those defendants were not parties to the suit even though the Yale Corporation was a defendant. Finally, Tibbetts maintains that the defendants wilfully defaulted and delayed the *Dittes* action by refusing to engage in discovery. A review of the record in *Dittes* reveals, however, that all of these claims was either raised by Tibbetts, or could have been raised by him, in that action. In *Dittes*, Tibbetts requested additional time to brief the issue of the fraudu-

lent affidavit, and Judge Covello granted that request, as well as several extensions of time. Despite these numerous extensions of time, Tibbetts failed to file a memorandum on that issue. Similarly, the allegations of fraud and of delayed discovery appear to have been the subject of several motions, including a motion for a new trial and a motion to recuse Judge Covello, both of which were denied on the merits. Accordingly, it appears that Tibbetts had the opportunity to raise, and did raise these issues in the *Dittes* matter, and that they were addressed by Judge Covello. In sum, all of the claims set forth in *Tibbetts v. Levin* involve the same transaction or connected set of transactions as at issue in *Dittes*.

In *Tibbetts v. Robinson*, Tibbetts' claims primarily relate to the following: (1) the plagiarism incident, *see Robinson* Second Am. Compl. ¶¶ 9–20; (2) the resulting investigation, disciplinary proceedings, and agreement, *see id.* ¶¶ 21–34; (3) the investigation prompted by Dittes' allegations and the defendants' alleged attempts to obstruct Tibbetts' access to his records, *see id.* ¶¶ 35–43; (4) the defendants' conduct in the *Dittes* action, *see id.* ¶ 44; and (5) the defendants' conduct during the bankruptcy proceeding, *see id.* ¶¶ 45–49.[29] Again, the claims based on the first four series of events involved the same factual predicate as those underlying the complaint in *Dittes*, and, to the extent that they were not brought in *Dittes*, they could have been. *See Woods*, 972 F.2d at 38 ("res judicata ... prevents a party from

---

**28.** As noted previously in this ruling, Judge Covello ruled that Huebner and Adams, employees of Yale University, were not defendants in *Dittes* due to Tibbetts' failure to properly serve them with process. Tibbetts claimed that those employees were properly served, and requested time to file papers supporting his claim. Although Judge Covello granted Tibbetts' numerous extensions of time, he never filed supporting papers, and Huebner and Adams were never made defendants in *Dittes*.

**29.** Tibbets also mentions the OGC's conduct in the *Dittes* case, *see Robinson* Am. Compl. ¶ 44. The Court has already discussed that conduct within the context of *Tibbetts v. Levin*.

litigating any issue or defense that could have been raised or decided in a previous suit," even if it was not). The fifth event underlying the claims in *Tibbets v. Robinson*, namely the defendants' conduct in Tibbetts' bankruptcy case in the Eastern District of Virginia, was not involved in *Dittes.* Therefore, the only claims in the instant three actions that were not part of the same transaction or connected set of transactions involved in *Dittes* are Counts One, Two, Seven and Eight in *Tibbetts v. Robinson,* and only to the extent that they relate to the defendants' conduct in the bankruptcy proceeding in Virginia.

### C. *Analysis of the preclusive effect of Tibbetts v. Yale Corporation*

As noted previously, the defendants have filed a supplemental motion for summary judgment that claims that the judgment recently entered in *Tibbetts v. Yale Corporation* in the Eastern District of Virginia precludes the four counts in *Tibbetts v. Robinson* (Counts One, Two, Seven and Eight) that are based, in part, on the defendants' alleged conduct during Tibbetts' prior bankruptcy proceeding in that same district.

 Under Virginia law, a "litigant who seeks to bar a claim based upon the defense of res judicata must establish four elements: identity of the remedy sought; identity of the cause of action; identity of the parties; and identity of the quality of the persons for or against whom the claim is made." *Davis v. Marshall Homes, Inc.,* 265 Va. 159, 164, 576 S.E.2d 504, 506 (2003); *Smith v. Ware,* 244 Va. 374, 376,

421 S.E.2d 444, 445 (1992).[30] Each element will be addressed in turn.

 The Court first finds that there is identity of the remedy sought in the two actions. In *Robinson,* Tibbetts sought compensatory and punitive damages, and double or treble damages pursuant to Conn. Gen.Stat. § 52–568; attorney's fees, costs and interest. In *Tibbetts v. Yale Corporation,* Tibbetts sought compensatory and punitive damages, as well as several forms of equitable relief. The Court finds that in both actions, Tibbetts primarily sought to recover damages for the alleged actions of the defendants during the bankruptcy action. Although there are slight differences between the two prayers for relief, they are not significant enough to warrant a finding that there was no identity of remedy sought.

In regard to the second element, identity of cause of action, the general rule in Virginia is:

> When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties.

**30.** Further, to assert a defense of res judicata, a party must establish that "the judgment in the former action [was] rendered on the merits by a court of competent jurisdiction." *Simmons v. Commonwealth,* 252 Va. 118, 120, 475 S.E.2d 806, 807 (1996) (emphasis added). There is no claim by Tibbetts that either the judgment of district court or the subsequent appellate decision from the Court of Appeals for the Fourth Circuit in *Tibbetts v. Yale Corporation* was rendered without jurisdiction. Moreover, it is apparent that the judgment entered by that district court on July 16, 2004, after the resolution of Tibbetts' appeal, was rendered on the merits. [*See* 3:97CV2561 Doc# 84, Ex. H].

*Kemp v. Miller,* 166 Va. 661, 674, 186 S.E. 99, 104 (1936); *see also Bates v. Devers,* 214 Va. 667, 672 n. 8, 202 S.E.2d 917, 921 n. 8 (1974) (a "cause of action" may be defined broadly "as an assertion of particular legal rights which have arisen out of a definable factual transaction"); *Brown v. Haley,* 233 Va. 210, 216, 355 S.E.2d 563, 567 (1987) ("The test to determine whether claims are part of a single cause of action is whether the same evidence is necessary to prove each claim").

The Virginia complaint sets forth the following claims: abuse of process; malicious use of process; malicious prosecution; intentional infliction of emotional distress; and vexatious suit. Counts One and Two in the *Robinson* complaint, which set forth claims for civil conspiracy to induce breach of contract and breach of contract, allege that the defendants "unlawfully attempted to force Plaintiff into Chapter 7 bankruptcy in the U.S. Bankruptcy Court." The Virginia complaint alleged that "the defendants ... willfully used legal process for an improper purpose to satisfy an ulterior motive, namely to force an unfair settlement and liquidate his pending lawsuits against Yale University in the State of Connecticut." These claims involve the same legal rights arising out of the same definable factual transaction, and, therefore, would also involve the same evidence. *Bates,* 214 Va. at 672 n. 8, 202 S.E.2d 917.

Count Seven and Eight of the *Robinson* complaint, which set forth claims for civil conspiracy to commit intentional infliction of emotional distress and intentional infliction of emotional distress, allege that the defendants conspired to inflict, and did inflict, intentional emotional distress by, inter alia, "attempting to unlawfully force Plaintiff into Chapter 7 bankruptcy in the U.S. Bankruptcy Court (Eastern District

of Virginia), to compromise and liquidate his pending claims." The Virginia complaint alleges that the defendants attempted "to deprive [Tibbetts] of [his] rights in bankruptcy and convert and liquidate his claims in the Connecticut litigation can only be characterized as malicious and with an intentional disregard of [Tibbetts'] rights." These claims involve the same legal rights arising out of the same definable factual transaction, and, therefore, would also involve the same evidence. Therefore, the Court finds that there is identity between the four claims set forth in *Robinson* and the claims set forth in the Virginia complaint. *Compare Sietz v. Ejtemai,* No. 218115, 2004 WL 1318742 (Va.Cir.Ct., Apr.19, 2004) (finding no identity of cause of action between prior action based on a promissory note and instant action based on statutory liability under Va.Code Ann. § 13.1–622 (1950)).

In regard to third element, "[t]he doctrine [of res judicata] prevents relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies." *Jones v. Morris Plan Bank of Portsmouth,* 168 Va. 284, 291, 191 S.E. 608, 610 (1937). "Whether privity exists is determined on a case by case examination of the relationship and interests of the parties. The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right." *Waters v. Commonwealth,* 432 Va.App. 636, 600 S.E.2d 918, 920 (2004) (citing *State Water Control Bd. v. Smithfield Foods, Inc.,* 261 Va. 209, 214, 542 S.E.2d 766, 769 (2001)). Because the named defendants in both the Virginia complaint and the *Robinson* complaint were Robinson, Stempel and the Yale Corporation,[31] the Court concludes that privity

---

**31.** Defendants in *Tibbetts v. Yale Corporation* also included the law firm representing the

defendants in these actions, Tibbetts' student loan provider and its law firm.

clearly exists. Moreover, in regard to the fourth element, the Court finds that there is interest of the "quality of the parties" between the action in Virginia and *Tibbetts v. Robinson.*

Consequently, because all four of the elements have been met, the judgment entered in the Eastern District of Virginia precludes Counts One, Two, Seven and Eight in *Tibbetts v. Robinson,* to the extent that they relate to the prior bankruptcy proceeding in Virginia.[32]

### VI. *Conclusion*

The defendants' motion for summary judgment [3:97CV2561 Doc. # 42; 3:97CV2682 Doc. # 31; 3:97CV2683 Doc. # 49] and supplemental motion for summary judgment [3:97CV2561 Doc. # 83; 3:97CV2682 Doc. # 54; 3:97CV2683 Doc. # 82] are **GRANTED,** as the Court finds that there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. The Clerk is directed to close these cases.

See also 322 F.Supp.2d 189.

---

**32.** Because Counts One, Two, Seven and Eight in *Robinson* are precluded by res judicata, the Court need not address the other basis for summary judgment as to those counts raised in the initial summary judgment motion.